**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHERISE GRIFFITH, ) | |
| ) | CASE NO. 1:13-cv-2502 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
|   Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Cherise Griffith ("Griffith") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Griffith's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On January 13, 2011, Griffith filed an application for SSI alleging a disability onset date of December 10, 2007. (Tr. 11.) Her application was denied both initially and upon reconsideration. Griffith timely requested an administrative hearing. *Id*.

On June 19, 2012, an Administrative Law Judge ("ALJ") held a hearing during which

Griffith, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 11.) On July 13, 2012, the ALJ found Griffith was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 19-22.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 32 at the time of her administrative hearing, Griffith is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Griffith has a high school education attending special education classes, in which she received mostly "B" and "C" grades. (Tr. 269, 469.) Griffith has past relevant work as a server, fast-food worker, laborer, and kitchen helper. (Tr. 58-59.)

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Griffith established medically determinable, severe impairments, due to degenerative disc disease, neurofibromatosis, affective disorder, and anxiety disorder. (Tr. 13.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Griffith was found capable of performing her past work activities, and was further determined to have a Residual Functional Capacity ("RFC") for a limited range of medium exertional work. (Tr. 16-17, 19-20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Griffith was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

In her sole assignment of error, Griffith contends that finding she did not meet the requirements for Listing 12.05C was not supported by substantial evidence.[1] (ECF No. 19 at 16-25.)

At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy **all** of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states, in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

---

[1] Since the time of the ALJ's decision, the term "mental retardation" has been replaced with "intellectual disability." This Court will continue to use the previous terminology in effect at the time of the decision for the sake of consistency. Notably, the underlying requirements of the listings have not changed.

> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> ***
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;

*Id.* Under each mental retardation listing, including Listing 12.05(C), a claimant must establish that her impairment: (1) satisfies the "diagnostic description in the introductory paragraph ***and*** any one of the four sets of criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added). If a claimant does not show that her impairment satisfies the diagnostic description for mental retardation, then she cannot be found disabled. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012); *Green v. Astrue*, 2012 U.S. Dist. LEXIS 92685 at *8 (S.D. Ohio July 5, 2012). "Plaintiff bears the burden of showing he had 'deficits in adaptive functioning' before age 22." *Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012) (*citing Foster*, 279 F.3d at 354.)

### 1. Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning Manifested Before Age 22

Based on the above, to satisfy Listing 12.05(C), a claimant must demonstrate: (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; ***and***, (3) an additional and significant work-related limitation or function. *See, e.g., Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). In this case, the decisive issue is whether

substantial evidence supports the ALJ's decision with respect to the first requirement.

Listing 12.05 does not define the phrase "adaptive functioning." Other courts have noted, however, that another portion of the Listings offers examples of "adaptive activities," which include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1); *see e.g., Wright v. Astrue*, 2013 U.S. Dist. LEXIS 26795 at \*\*31-32 (S.D. Ohio Feb. 26, 2013). The Sixth Circuit has described deficits in adaptive functioning as follows:

> The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. *Heller v. Doe*, 509 U.S. 312, 329, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 28-29 (3d rev. ed. 1987) ("DSM-III")). To determine the definition of mental retardation under the SSA, it is appropriate to consult leading professional organizations' definitions. See 67 Fed. Reg. 20022 (2002). The American Psychiatric Association defines adaptive-skills limitations as "[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." DSM-IV-TR at 49.

*Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 677 (6th Cir. 2009); *accord Wright*, 2013 U.S. Dist. LEXIS 26795 at \*\*31-32; *Greathouse v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 18904 (N.D. Ohio Feb. 14, 2014).

A number of recent decisions from within this Circuit have pointed out that "[n]owhere in the paragraph [discussing the diagnostic description] is it specified how severe such limitations must be to qualify." *Gethin v. Colvin*, 2014 WL 4104130 at \*10 (W.D. Ky. Aug. 18, 2014); *Robinson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 93783 (S.D. Ohio July 10, 2014) ("The plain language of Listing 12.05 does not identify how severe limitations must be to qualify as

'deficits in adaptive functioning.'") The *Gethin* and *Robinson* decisions indicate that case law from the Sixth Circuit and other federal courts suggest that a claimant must have "relatively significant deficits" to satisfy the Listing. *Id*. It seems unlikely that an individual with relatively low IQ scores, whether falling in the range of mental retardation or borderline intellectual functioning, would have absolutely no deficits in adaptive functioning. As such, this Court reasons that *significant* deficits in adaptive functioning are required before the diagnostic criteria can be considered satisfied.

The ALJ, in addressing whether Griffith had met her burden of demonstrating deficits in adaptive functioning prior to age 22, found as follows:

> Turning back to listing 12.05, borderline intellectual functioning is considered under listing 12.05. The threshold requirement is evidence of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. There is no evidence of deficits in adaptive functioning in this case. The claimant's ability to function is best evidenced by the fact that she had earnings above the minimum level for substantial gainful activity ... during several years since 1999, and before she reached the age of 22. (Exhibit 16E, p. 4; Exhibit 17E).

(Tr. 15-16.)

The ALJ's discussion on this issue is admittedly brief. Nonetheless, there is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937 (N.D. Ohio Aug. 15, 2014); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012). A reviewing court may, however, "look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis." *Osborne*, 2014 U.S. Dist. LEXIS 113937

at *22.

In other portions of the decision, the ALJ noted Griffith "has been gainfully employed in the past doing at least unskilled work. The claimant's daily routine involves childcare and housework, and she is able to perform these simple and multistep tasks in a consistent manner." (Tr. 18.) The ALJ noted that Griffith reported that "she is responsible for getting her older children to school, and caring for the younger children during the day. The claimant prepares meals for her children, helps them with all self-care, takes care of her own self-care, cares for family pets including a dog and a cat, cleans, washes dishes, does laundry, and performs some yard work." (Tr. 14.) The ALJ also observed that Griffith had successfully obtained a driver's license and was able to drive in the past, noting that her license was suspended for legal issues.[2] *Id*. The ALJ also specifically noted that:

> The claimant is able to go shopping for food, household supplies, and clothes, and reported going food shopping for one hour every other day. The claimant reported that she is able to manage household finances. In her spare time, she reads, watches television, and works on crafts. She indicated that she has experienced no changes in her ability to do these activities. (Exhibit 19E, p. 10).
>
> * * *
>
> The claimant testified that she has difficulty accepting criticism from others, but she also reported that she spends time with others, has no difficulty getting along with family, friends, or neighbors, and gets along well with authority figures. She has never been let go from a past job due to difficulties interacting with others. (Exhibit 19E). School records demonstrated that the claimant was very social and had many friends. (Exhibit 2SE).

(Tr. 14.)

---

[2] It appears Griffith's driver's license was suspended for non-payment of child support. (Tr. 643.) From her testimony, it appears Griffith gave up custody of one of her six children. (Tr. 40-41.)

9

Finally, the ALJ also noted the consultative examining psychologist's opinion by Richard M. Halas, M.A., which noted Griffith's wide range of adaptive functioning, including her ability to live independently, care for children (including cooking, cleaning, shopping, laundry), drive a motor vehicle, and work history. (Tr. 16, 740.) He also noted Mr. Halas's diagnosis of borderline intellectual functioning. (Tr. 16, 471.)

The ALJ's reliance on the activities described above to illustrate a lack of significant deficits in adaptive functioning constitutes substantial evidence. The Court is unpersuaded that the ALJ's failure to mention test scores from Griffith's teen years or a teacher's note undermines the ALJ's decision.[3] Even if substantial evidence exists capable of supporting Griffith's position that Listing 12.05(C) was satisfied, the Court cannot overturn the ALJ's contrary decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citations omitted). The ALJ's decision finding that Griffith did not have significant deficits in adaptive functioning prior to age 22 (or at any time for that matter), is supported by a large number of decisions. *See, e.g., Pugh v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 138734 (S.D. Ohio Sept. 30, 2014) ("Plaintiff's ability to complete school, to receive good grades (as he told the consultative examiner), to work immediately after graduation, to work at a number of different jobs, to perform semi-skilled work, to marry, to raise children, and to live independently, all support a finding that he did not have deficits in adaptive functioning at any time in his life."); *Greathouse*, 2014 U.S. Dist. LEXIS at *7 (finding that Plaintiff's ability to prepare simple meals, use public transportation,

---

[3] Griffith's reliance on IQ tests prior to age 22 to establish the required significant deficits in adaptive functioning is not well taken. If valid, qualifying IQ scores were sufficient to satisfy the diagnostic criteria, the requirement would be rendered redundant.

drive, shop in stores, attend church services, act as an usher in church services, attend AA/NA meetings, and assemble model cars adequately supported the ALJ's decision finding a lack of deficits in adaptive functioning); *Gethin*, 2014 WL 4104130 at \*\*11-12 (finding ALJ's decision that claimant lacked deficits in adaptive functioning constituted substantial evidence where claimant had significant work history, obtained a high school diploma, obtained a driver's license, cared for his personal needs, lived independently, and performed household chores); *DeLoach v. Comm'r of Soc. Sec.*, 2014 WL 533591 (S.D. Ohio Feb. 11, 2014) (finding that ALJ's decision as to the lack of deficits in adaptive functioning was supported by substantial evidence where there was no diagnosis of mental retardation and claimant could care for her children, attend to her own personal care, perform household chores, shop for groceries, and had experience as a day care provider); *Harris v. Comm'r of Soc. Sec.*, 330 Fed. App'x 813, 815-16 (11th Cir. 2009) (claimant who did well in special education classes; was able to perform several jobs; and who had mild limitations in daily living activities, social functioning, and concentration did not have the type of deficits in adaptive functioning required for Listing 12.05(C)).

The Court also notes that Griffith has not pointed to a single diagnosis of mental retardation in the record. While the Court recognizes that a diagnosis of mental retardation is not required before a listing can be deemed met, there is "ample Sixth Circuit precedent for the proposition that ... a clinical psychologist's diagnosis of the claimant as outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05C." *Hobbs v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 133909 ast \*\*8-9 (N.D. Ohio, Sept. 12, 2014) (*quoting Thomas v.*

*Comm'r of Seoc. Sec.*, 2010 U.S. Dist. LEXIS 28286 at *8 (N.D. Ohio Mar. 25, 2010)). The *Thomas* decision explained that "significant reliance [by an ALJ] on a diagnosis of something other than 'mental retardation' such as 'borderline intellectual functioning,' is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV." 2010 U.S. Dist. LEXIS 28286 at *11 (citations omitted).

Finally, Griffith argues at great length that finding Griffith did not have deficits in adaptive functioning as evidenced by her engaging in substantial gainful activity ("SGA") prior to age 22 was incorrect because she did not, in fact, have earnings that constituted SGA. The Court finds this argument immaterial for several reasons. First, reading the ALJ's decision as a whole, finding a lack of deficits in adaptive functioning was not based solely on Griffith's work history. Second, the significance of Griffith's work history prior to age 22 is not the amount of money she earned, but rather that the ALJ felt that Griffith's ability to work without issue was illustrative of a lack of any significant deficits in adaptive functioning. As such, the Court finds Griffith's sole assignment of error lacking in merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: November 12, 2014